WILLIAMS, Individually and as Special Administrator of the Estate of Lucinda Williams, Appellant, v. HOFMANN and others, Respondents: STATE, Intervening Respondent.

*No. 365. Argued November 26, 1974.—Decided December 20, 1974.*
(Also reported in 223 N. W. 2d 844.)

For the appellant there were briefs by *William A. Nohr* and *Daniel J. Steininger,* both of Milwaukee, and oral argument by *Mr. Nohr.*

For the defendant-respondent H. Myron Kauffman there was a brief by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Ned J. Czajkowski;* and for the defendant-respondents James W. Hofmann and Milwaukee County there was a brief by *Robert P. Russell,* Milwaukee County Corporation Counsel, and *James J. Bonifas,* Deputy Corporation Counsel, and oral argument by *Mr. Bonifas.*

For the intervening-respondent the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, C. J.    The central issue presented by this appeal concerns the constitutionality of sec. 155.06 (7) (c), Stats.,[1] a section of the Uniform Anatomical Gift Act, which immunizes persons who act in good faith in accord with the terms of the act, from civil or criminal liability. The provision was interposed as an affirmative defense to the complaints of plaintiff-appellant Lee E. Williams,

---

[1] This section provides: "(c) A person who acts in good faith in accord with the terms of this section or with the anatomical gift laws of another state (or a foreign country) is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act."

in which he seeks damages on behalf of himself and his wife's estate, arising out of allegedly wrongful conduct connected with the removal of his deceased wife's kidneys for transplantation in a live donee. Plaintiff demurred to this affirmative defense to each complaint. The trial court overruled the demurrers, and plaintiff has appealed.

The facts as alleged in the complaints are as follows:

On Friday evening, January 29, 1971, Mrs. Williams suffered an intracerebral hemorrhage and was admitted to Milwaukee County General Hospital and placed under the care of Dr. James W. Hofmann, one of the defendants-respondents. Between 3:20 a. m. and 5 a. m. the next morning she suffered respiratory arrest and was placed on a mechanical respirator. At 8:45 a. m. plaintiff was told by Dr. Hofmann that his wife was dead. Relying on this information, and at Dr. Hofmann's request, plaintiff signed a document consenting to the removal of his wife's kidneys. On the following day, Sunday morning, Mrs. Williams' death was announced at her church. On Monday morning, February 1st, plaintiff began to make arrangements for the funeral. The funeral director was unable to locate the body at the morgue, however, and plaintiff then learned that his wife had died that morning rather than the previous Saturday. He rushed to the hospital to ascertain his wife's true condition and to stop the operation, but arrived too late.

Plaintiff alleges Mrs. Williams was kept alive through use of a variety of life support techniques and devices until 9 a. m. Monday morning, even though Dr. Hofmann pronounced her dead at 8:20 a. m. on that morning, and the kidney removal operation commenced at 8:35 a. m.

In his capacity as special administrator of his wife's estate, plaintiff-appellant, under one complaint, seeks to recover damages for assault and battery, and negligence.

In his complaint brought in his individual capacity, plaintiff-appellant seeks damages for willful and intentional mutilation of a corpse, negligent mutilation of a corpse, and negligence in communicating an erroneous and premature death message.

Defendants Hofmann, Dr. H. Myron Kauffman (who performed the transplant), and Milwaukee county (joined because Mrs. Williams was treated at Milwaukee County Hospital), filed similar answers to each complaint, denying most of the material allegations. In addition, each defendant asserted three affirmative defenses: (1) Sec. 895.43, Stats., governing tort liability of local governments and their agents and employees, limits plaintiff's potential recovery to $25,000 and outlaws punitive damages; (2) plaintiff signed a valid consent form for the kidney removal; and (3) defendants acted in good faith in reliance on the consent given by plaintiff, and therefore are immune from liability under sec. 155.06 (7) (c) of the Uniform Anatomical Gift Act. Plaintiff's demurrer is only to the third affirmative defense in each answer. By stipulation, the state of Wisconsin was added as a party respondent because the constitutionality of a state statute is at issue.

In this appeal it is first clear that the Uniform Act in general, and sec. 155.06 (7) (c) in particular, does not extend, as the parties seem to assume, to all actions connected with the transplant operation from the pre-death treatment of the donor to the transplantation into the donee. The terms of the act are not so broad. Nothing in the act suggests it applies to the treatment of live humans, either the donor or donee, except as to the determination of the time of the donor's death.

The first subsection of the act contains definitions. Sub. (2) to sub. (6) prescribe certain mechanics concerning the giving of anatomical gifts: Who may give, who may receive, and how the gift document is executed,

delivered and amended or revoked. Under sub. (7) (a),[2] the gift becomes effective at death. Upon death, the transplant surgeons may remove the bodily parts specified in the gift "without unnecessary mutilation." Under sub. (7) (b), the time of death is determined by a physician who "shall not participate in the procedures for removing or transplanting a part."

Sub. (7) (c), the liability limitation at issue here, provides:

"(c) A person who acts in good faith in accord with the terms of this section or with the anatomical gift laws of another state (or a foreign country) is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act."

The "terms of this section" as just pointed out concern (a) the mechanics of giving and receiving anatomical gifts, (b) the determination of time of death, and (c) procedures following death. Since the "terms of the section" do not extend to treatment of the donor prior to death, nor to treatment of the live transplant donee, we conclude that the liability limitation does not apply to such treatment.[3]

---

[2] Sec. 155.06 (7) (a), Stats., provides: "(7) RIGHTS AND DUTIES AT DEATH. (a) The donee may accept or reject the gift. If the entire body is given for the purpose of anatomical research, it shall not be delivered to the donee or his agent if the surviving spouse or other person who assumes custody of the body requests a funeral service or other last rites for the deceased. If such a request is made, the body shall not be delivered until after the rites have been conducted. If the entire body is given for any purpose other than anatomical research or if the gift is of a part of the body, the donee, upon the death of the donor and prior to embalming, shall cause any parts given which it intends to remove to be removed without unnecessary mutilation. After removal of any such parts, custody of the remainder of the body vests in the surviving spouse, next of kin or other persons under obligation to dispose of the body."

[3] A similar conclusion was reached in comment, *Suggested Revisions to Clarify the Uncertain Impact of Section 7 of the Uni-*

Plaintiff sues in one action as special administrator of his wife's estate, based on the course of treatment she received while still alive. Since the act does not apply to such treatment, defendants' affirmative defense based on good-faith conduct under sec. 155.06 (7) (c) of the act, is not a defense in that action. Therefore, plaintiff's demurrer to this affirmative defense, as asserted in the action on behalf of the wife's estate, should have been sustained by the trial court.

Plaintiff's second suit, containing a cause of action for mutilation of a corpse, does pertain to conduct covered by the terms of the act, because the defendants' alleged wrongdoing occurred after death had occurred. We therefore reach the crucial question of the constitutionality of sec. 155.06 (7), Stats., since the alleged good-faith conduct, as asserted by respondents, would be a valid defense under sec. 155.06 (7) (c), if that section is constitutional. We uphold the constitutionality of that section. None of the arguments attacking constitutionality have merit.

A. *Art. I, sec. 9, Wisconsin Constitution.*

Plaintiff contends that sec. 155.06 (7) (c), Stats., is unconstitutional because it abrogates rights of injured persons in violation of art. I, sec. 9 of the Wisconsin Constitution.[4] Plaintiff asserts this argument in his

---

*form Anatomical Gift Act on Determinations of Death,* 11 Ariz. L. Rev. (1969), 749, 764. After an examination of the proceedings of the Commissioners of Uniform State Laws, the author concludes: "the committee proceedings contain no hint that the disclaimer should apply to a doctor's treatment of a donor as a patient." The author goes on to suggest that the limitation on liability was not even intended to apply to liability arising from the determination of death. This latter question is not before the court here, however, because plaintiff's complaints have not alleged injury arising from any wrongdoing connected with the determination of death itself. Plaintiff is not suing, for example, for wrongful death.

[4] This section provides: "**Remedy for wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all in-

capacity as special administrator of his wife's estate seeking damages for allegedly wrongful treatment she received while still alive. Plaintiff suggests that in actions arising out of transplant operations sec. 155.06 (7) (c) unconstitutionally replaces the present negligence standard of care applicable to medical malpractice actions, with the arguably lesser standard of good faith. However, as we have noted, the Uniform Anatomical Gift Act does not pertain to the course of treatment received by the donor prior to death. Therefore, sec. 155.06 (7) (c) does not in any way affect plaintiff's right to sue for the medical malpractice or assault and battery alleged in the complaint here. Plaintiff's contention that art. I, sec. 9 of the constitution has been violated is unfounded.

B. *Is the term "good faith" unconstitutionally vague?*

Plaintiff next argues that the term "good faith," as used in sec. 155.06 (7) (c), Stats., is unconstitutionally vague. In *Forest Home Dodge, Inc. v. Karns* [5] the court summarized the void-for-vagueness doctrine applicable to civil statutes:

" 'A statute is not necessarily void merely because it is vague, indefinite, or uncertain, or contains terms not susceptible of exact meaning, or is stated in general terms, or prescribes a general course of conduct, or does not prescribe precise boundaries, or is imperfect in its details, or contains errors or omissions, or because the intention of the legislature might have been expressed in plainer terms, and questions may arise as to its applicability, and opinions may differ in respect of what falls within its terms, or because the statute is difficult to execute.'

juries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

[5] (1965), 29 Wis. 2d 78, 94, 138 N. W. 2d 214, quoting 50 Am. Jur., *Statutes*, p. 489, sec. 473.

"Unless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid. *Marshfield v. Cameron* (1964), 24 Wis. 2d 56, 61, 127 N. W. 2d 809; 82 C. J. S., Statutes, p. 113, sec. 68."

Judged by these criteria, sec. 155.06 (7) (c), Stats., is not unconstitutionally vague.

"Good faith" is a term that "prescribes a general course of conduct." Whether an individual acted in good faith is a question that can only be answered following a careful analysis of the facts in a particular case. The general nature of good-faith conduct was considered by this court in *Baker v. Northwestern National Casualty Co.*[6] where the specific question before the court was whether an insurer had acted in bad faith in refusing to settle a claim within the policy limits. The court held that the insurer could be guilty of bad faith if its conduct "evinces a significant disregard of the interests of the insured," " 'carries with it a suggestion of dishonesty,' " or is " 'a species of fraud.' " [7] The court further said that while negligence is not per se bad faith conduct, "[t]he extent and character of the negligence, however, are factors to be considered by the trier of fact in weighing the matter of bad faith." [8]

In an earlier case, *Wilde v. Milwaukee Electric Railway & Light Co.*,[9] this court approved a jury instruction in a situation involving alleged wrongful treatment of

[6] (1965), 26 Wis. 2d 306, 132 N. W. 2d 493.

[7] *Id.* at page 316.

[8] *Id.* at page 315.

[9] (1911), 147 Wis. 129, 132 N. W. 885. *See Koerber v. Patek* (1905), 123 Wis. 453, 102 N. W. 40, establishing the right to recover for wrongful handling of a corpse. In this case the plaintiff was held entitled to recover where defendant was given permission to examine the decedent mother's stomach, but instead removed it. *See also:* Prosser, *Torts* (4th ed. 1971), pp. 58, 59, sec. 12; 4 Restatement, *Torts,* sec. 868, "Interference with Dead Bodies," p. 402.

a corpse, that relieved the defendant of liability, in part, based on good-faith conduct. In *Wilde,* after the plaintiff's daughter was struck and killed by a streetcar, employees of defendant placed her lifeless body on the train and transported it to the city morgue. Plaintiff sued for wrongful treatment of the corpse, but lost. On appeal, this court approved the following jury instructions:

" 'But if, on the other hand, you find that what was done by the servants of the defendant with the dead body was done in good faith and solely for the purpose of accomplishing an early return thereof to the plaintiffs, and that the acts and conduct of the defendant's servants were not characterized by recklessness or heartlessness, then the plaintiffs cannot recover, and your verdict should be for the defendant.'
"It is the opinion of this court that this charge, as applied to the facts in the case before us, is a correct exposition of the law." [10]

We conclude that the term "good faith" is not unconstitutionally vague as used in sec. 155.06 (7) (c), Stats.

C. *Does sec. 155.06 (7) (c), Stats., deny plaintiff the equal protection of the law?*

Plaintiff next argues that sec. 155.06 (7) (c), Stats., denies plaintiff the equal protection of the laws in that it unlawfully bestows a special immunity upon doctors involved in transplant operations. Plaintiff argues there is no rational justification for granting doctors such immunity in the case of transplant operations, but not in other malpractice cases. But as we have already observed, the limitation on liability contained in sec. 155.06 (7) (c) does not govern liability arising out of the physician's course of treatment of the donor while he is still alive. Therefore, the section is not a denial of equal protection in the manner asserted by plaintiff. Moreover, the limitation on liability contained in

[10] 147 Wis. at page 132.

sec. 155.06 (7) (c) is justified by the legitimate public purpose of encouraging doctors to participate in the removal of organs following death, and therefore increasing their supply.[11]

Thus, we conclude that sec. 155.06 (7) (c), Stats., does not deny plaintiff the equal protection of the laws and that the provision serves a legitimate public purpose and is therefore valid.

D. *Does sec. 155.06 (7) (c), Stats., unlawfully delegate legislative power?*

Plaintiff's final constitutional argument is that sec. 155.06 (7) (c), Stats., violates art. IV, sec. 1 of the Wisconsin Constitution which provides: "The legislative power shall be vested in a senate and assembly." Plaintiff argues that by extending limitation of liability to persons who act in good faith in accord "with the anatomical gift laws of another state (or a foreign country)," sec. 155.06 (7) (c) unlawfully delegates to foreign jurisdictions the power to determine Wisconsin law.

---

[11] The chronic shortage of organs for use in transplantation is well-documented and was a significant consideration leading to passage of the Uniform Act. *See,* Commissioners' Prefatory Note to Uniform Anatomical Gift Act, 8 Uniform Laws Annot. (Master Edition, West), pp. 16, 17; Note, *The Sale of Human Body Parts,* 72 Mich. L. Rev. (1974), 1182, 1185, 1201–1208; Dukeminier, *Supplying Organs for Transplantation,* 68 Mich L. Rev. (1970), 811, 811–815.

Concerning the effect on supply of organs, of potential liability incurred by participating doctors, two commentators have written:

". . . Of far greater import, the physicians must labor under the shadow of civil and even criminal liability. This threat, which no doubt impedes the successful development of homotransplantation, presents a striking similarity to the legal problems faced by the eighteenth and early nineteenth century anatomists. Now, as then, the answer must come from statutes, not decisions; and until there are sufficient statutes, doctors will be forced to work not only at the edge of medical knowledge but also at the edge of the law." Sideman and Rosenfeld, *Legal Aspects of Tissue Donations from Cadavers,* 21 Syracuse L. Rev. (1970), 825, 828.

This argument is not before us, as a matter of right on the part of the plaintiff, because it was not raised in the trial court. Moreover, the facts as alleged in the complaints and answer indicate that the instant case arises entirely under Wisconsin law, and no question of the applicability of foreign laws is presented. Therefore, plaintiff lacks standing to raise this issue.

In any event, on the merits, this portion of sec. 155.06 (7) (c), Stats., does not delegate legislative power to foreign jurisdictions. The provision only states, in effect, that if an act is done in good faith in another jurisdiction that is considered lawful in that jurisdiction, it will be accorded similar status in Wisconsin. This provision is designed to solve conflict-of-laws problems and is justified on principles of comity and as an effort to provide physicians greater certainty concerning their potential liability. We conclude, therefore, that sec. 155.06 (7) (c) does not empower foreign jurisdictions to make Wisconsin laws; rather the section only recognizes the lawfulness of actions taken in such jurisdictions in accord with their own laws. The section does not unlawfully delegate legislative power.

This case comes to us on demurrer. The facts must now be tried out and our conclusion is that the first complaint, if proven, stands as an action for alleged malpractice but the second complaint, growing out of the circumstances of the transplant, is subject to the defense, if proved, of the defendants-respondents' good faith.

*By the Court.*—Order affirmed in part; reversed in part; and remanded for further proceedings not inconsistent with this opinion.