Thelma **SCHEMBRE**, Rebecca M. **Mcnair, Bobby Joe Schembre, Laurie V. Laiben, Frank Schembre, Jr., Appellants,**

v.

**MID–AMERICA TRANSPLANT ASSOCIATION, Jefferson Memorial Hospital, Chris Guelbert, Respondents.**

No. ED 81539.

Missouri Court of Appeals,
Eastern District,
Division One.

May 11, 2004.

Robert J. Lenze, St. Louis, MO, for Appellants.

Edward S. Meyer, Judith C. Brostron, St. Louis, MO, Randall D. Sherman, Hillsboro, MO, for Respondents.

GEORGE W. DRAPER III, Judge.

Thelma Schembre, et al. (hereinafter and collectively, "Appellant") appeals from the trial court's grant of summary judgment in favor of Mid–America Transplant Services (hereinafter, "MTS"), Jefferson Memorial Hospital (hereinafter, "Hospital"), and Christopher Guelbert, R.N. (hereinafter, "Guelbert") after harvesting leg bones, tissue, and corneas from Frank Schembre, Sr. (hereinafter, "Decedent"). Appellant argues the trial court erred in granting summary judgment with respect to MTS, Hospital, and Guelbert because there were genuine issues of material fact with respect to: (1) each parties' negligence, thus precluding immunity under the Uniform Anatomical Gift Act (hereinafter, "the UAGA"), Section 194.270.3 RSMo (1996)[1]; (2) whether the parties acted in good faith under the UAGA; and (3) whether the parties exceeded the scope of Appellant's consent. We affirm in part; reverse and remand in part.

---

1. All further statutory references are to RSMo (1996) unless otherwise indicated.

On November 28, 1998, Decedent suffered a heart attack and was transported to Hospital's emergency room. Appellant and two of her adult children arrived shortly thereafter. Hospital staff notified Appellant that Decedent could not be resuscitated and had passed away. Appellant and her children were moved to "the quiet room," an area of the hospital where families were allowed to collect themselves upon the death of a loved one. While in the quiet room, the family was approached by Guelbert, a Hospital employee, who inquired about their willingness to consider donating organs, bone, or tissue from Decedent's body.

Appellant and her children discussed with Guelbert the options should they choose to make any donation. Guelbert informed Appellant that Decedent did not meet the requirements for donation of organs, but suggested they could donate eyes, bone, or tissue if they wished. Initially, Appellant declined to give consent to any donation, but after discussing with her children Decedent's wish to help people, she agreed to donate his corneas. Appellant was adamant about restricting the donated organs from being used for research purposes.

Guelbert then inquired about her willingness to consent to donating Decedent's bone in his legs. At this point, the parties' account of the conversation differ. Appellant and her two children testified Guelbert indicated with his hands the amount of bone which would be removed from Decedent's leg, stating it was approximately two inches. When Appellant questioned his estimate by stating it appeared to be more than two inches, Guelbert told her it would be approximately two to four inches, to be removed from below the knee and above the ankle.

Appellant had additional questions which she testified Guelbert was unable to answer, so he left the quiet room and an unidentified female nurse came in to give a better explanation of the process. Appellant and her son testified this unidentified female nurse explained the eyeball would be slit to facilitate harvesting the corneas, but it would not be removed from Decedent's body. The female nurse also affirmed Guelbert's representation that approximately two to four inches of bone would be removed from Decedent's leg. Appellant and her son stated the female nurse appeared to be writing on a clipboard, and they thought she was noting the limitations on the consent form. Again, Appellant stated she did not want any donated organs to be used for research.

Guelbert testified he explained the donation process in detail to Appellant and her children. Guelbert stated he remembered the family being very much in favor of organ donation, and they had several questions. He testified he told the family the entire eyeball would be removed in order to harvest the cornea. Further, Guelbert explained to the family in detail that the long bones of the leg would be removed if they chose to donate bone. Guelbert stated he would have indicated any limitation with respect to the donation on the consent form.

After lengthy discussion, Guelbert assisted Appellant in completing the consent form. Guelbert went through the form item by item and read it to Appellant. The form indicated a check mark "yes" in the boxes for donation of "eyes" and "bone." The box labeled "any needed tissues" was marked "no." Guelbert stated he read the completed form to Appellant, which she then signed. Appellant testified she did not read the consent form because she was too distraught from her husband's death. There are no limitations on the face of the consent form.

Upon completion of the consent form, Guelbert contacted MTS in order to make arrangements for harvesting the corneas, bone, and tissue. Matthew Thompson (hereinafter, "Thompson"), a compliance manager employed by MTS, testified about the standard protocols for procuring eye, bone, and tissue donations. Thompson testified that "bone" is a term of art used in the organ donation community that generally encompasses the removal of the lower bones of the leg, including the iliac crest, femur, tibia, fibula, and fascia lata. Moreover, when a cornea is donated, the entire eye is removed during the process.

Thompson stated he initially reviewed the consent form completed by Appellant and Guelbert the evening Decedent died. Thompson testified the consent form appeared to be valid and unambiguous on its face. Further, Thompson stated it was his practice to contact the family should the consent form appear to have a discrepancy or ambiguity. Moreover, Thompson indicated families were able to place limitations on the amount of bone they donated. However, there was no such limitation on this consent form.

After arriving with a tissue recovery team from MTS, Thompson confirmed that the team procured both eyes and all of the lower leg bones, including the fascia lata, from Decedent. Upon completion of the procurement, Decedent's body was released for funeral preparation. It was at this time Appellant and her children learned of the removal of the entire eyeball and all lower leg bones.

Appellant and her children brought this suit seeking damages from MTS, Hospital, and Guelbert. All defendants filed motions for summary judgment which were granted by the trial court on the basis that the defendants were granted immunity from liability under the UAGA because they acted in good faith when harvesting the eyes, bone, and tissue. Appellant appeals.

It is well settled that when considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmovant. *ITT Commercial Fin. v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo. Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden of proof on a summary judgment movant is to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378.

■ A "defending" party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's elements; (2) that the nonmovant has not been able to produce, or will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any of the claimant's elements; or (3) that there is no genuine dispute as to the existence of facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

■ The nonmovant must show by affidavits, depositions, answers to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be without any genuine dispute is, in fact, genuinely disputed. *Id.* A "genuine issue" exists where the record contains competent materials that establish a plausible, but contradictory, version of the movant's essential facts. *Id.* at 382.

Appellant's first point on appeal attacks the trial court's grant of summary judgment in favor of MTS. Appellant claims there is a genuine issue of material fact as to whether MTS was negligent in the re-

moval of the corneas, bone, and tissue from Decedent's legs such that MTS would not be immune from liability under the UAGA. MTS argues it complied with all of the requirements set forth under the UAGA by obtaining a written consent form from a qualified family member and by removing only those items which were indicated on the form.

This is a case of first impression in Missouri. As a case of first impression, it is instructive to examine cases from other jurisdictions in addressing these issues. Under the UAGA as adopted and modified in Missouri, "[a] person who acts without negligence and in good faith and in accord with the terms of this act or with anatomical gift laws of another state or foreign country is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his [or her] act." Section 194.270.3 RSMo (1996). The parties direct us to several cases from other jurisdictions which are informative on the question of what constitutes acting in "good faith," but do not contain any requirement or discussion of what encompasses acting "without negligence." This Court's research reveals that Florida adopted a similar standard requiring a finding of acting "without negligence and in good faith" in order for a party to receive immunity from civil liability under the UAGA.[2] Unfortunately, Florida offers little guidance in that it has not by court opinion addressed this issue as of this date. We address the issue of acting "without negligence" first.

■ Generally, in order to prove negligence, the plaintiff must plead and prove that the defendant had a duty to protect the plaintiff from injury, the defendant breached that duty, and the defendant's failure directly and proximately caused the plaintiff's injury. *Robinson v. Health Midwest Development Group*, 58 S.W.3d 519, 521 (Mo. banc 2001). In this instance, MTS must bear the burden of proving it acted without negligence and in good faith in order to receive immunity from civil liability for harvesting Decedent's corneas, bone, and tissue.

■ There is no dispute that MTS has a duty to follow the requirements set forth under the UAGA in order to complete a valid organ donation. MTS first obtained a written consent form which is permissible under Section 194.240.2. The form was executed by a member of a class of persons authorized to consent to organ donation pursuant to Section 194.220.2(2). MTS presented testimony that the consent form appeared to be valid on its face with no limitations noted. Additionally, MTS offered evidence of its standard protocol when removing the eyes, bone, and tissue and testified that it followed these protocols. Finally, no one from Decedent's family contacted MTS to limit or revoke the gift which would preclude it from accepting the gift as mandated in Section 194.220.3. There is no evidence in the record creating a genuine issue of material fact that MTS breached its duty in the instant case. Therefore, we hold MTS acted without negligence when removing Decedent's corneas, bone, and tissue.

Appellant argues should we find MTS acted without negligence, we should find acting in "good faith" is a jury question. MTS disagrees, arguing a good faith determination under the UAGA can be addressed appropriately during the summary judgment phase as a matter of law. MTS

---

**2.** Fla. Stat. Section 765.517(5)(2002) states "A person who acts in good faith and without negligence in accord with the terms of this part ... is not liable for damages in any civil action or subject to prosecution for his or her acts in any criminal proceedings."

relies on several cases from other jurisdictions for this proposition.

The first case to define good faith in an organ donation context was *Nicoletta v. Rochester Eye and Human Parts Bank, Inc.*, 136 Misc.2d 1065, 519 N.Y.S.2d 928 (1987). Good faith is "an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." *Id.* at 930. *Nicoletta* further discussed whether the issue of determining if a person acted in good faith under the UAGA was a question of fact or a question of law. Following an extensive review of good faith decisions in other contexts, the *Nicoletta* court held in this instance, where the legislature has so clearly prescribed a "standard by which to judge a defendant's conduct," good faith determinations are a question of law:

> In those cases, most of which involved dealings of a corporate or commercial nature, there was no express or specific criteria of a statutory nature incorporating such a 'standard of conduct' against which an individual's conduct could be measured, without submitting evidence in the form of in-court testimony to a trier of fact.
>
> In the instant case, however, the Court believes that the Legislature had created an objective standard by which the good faith of a donee could be measured. The [UAGA] establishes a statutory scheme which outlines the means of effecting an anatomical gift, the classes of individuals entitled to effect such a gift, and the circumstances under which such

a gift must be deemed null and void. None of the previous good faith cases have involved such a definitive standard by which to judge a defendant's conduct.

*Nicoletta,* 519 N.Y.S.2d at 931.

Several cases of first impression in other jurisdictions have adopted the *Nicoletta* analysis in finding good faith is a question of law. *See Hinze v. Baptist Memorial Hospital,* 1990 WL 121138, *5 (Tenn.Ct. App. Aug. 23, 1990); *Brown v. Delaware Valley Transplant Program,* 420 Pa.Super. 84, 615 A.2d 1379, 1383–84 (1992); *Kelly–Nevils v. Detroit Receiving Hospital,* 207 Mich.App. 410, 526 N.W.2d 15, 19 (1994); *Rahman v. Mayo Clinic,* 578 N.W.2d 802, 805 (Minn.Ct.App.1998); *Andrews v. Alabama Eye Bank,* 727 So.2d 62, 64–65 (Ala. 1999); *Ramirez v. Health Partners of Southern Arizona,* 193 Ariz. 325, 972 P.2d 658, 662–63 (Ct.App.1999). We find these authorities persuasive, and hold the good faith determination under the UAGA is a question of law which can be addressed on summary judgment. In each of these cases, the donation procurement facility was held to have acted in good faith under the UAGA, and thus granted immunity from civil liability, despite flaws with obtaining consent or in erroneously completing the consent form.[3]

■ We find the same result is warranted here. MTS complied with the UAGA requirements of obtaining a written consent form. This form was signed by Appellant, who is a member of the class of persons authorized to consent to organ

---

**3.** *See, e.g., Nicoletta,* 136 Misc.2d 1065, 519 N.Y.S.2d 928 (good faith when eye bank justifiably relied on facially valid permission form even though signed by a person not authorized to give consent, and bank had no actual notice that family members opposed the gift); *Hinze,* 1990 WL 121138 (same); *Kelly–Nevils,* 207 Mich.App. 410, 526 N.W.2d 15 (same); *Brown,* 420 Pa.Super. 84, 615 A.2d 1379

(bank acted in good faith even when it did not obtain consent from person authorized to give consent after conducting a search for the decedent's family members and failing to locate them); *Lyon v. United States,* 843 F.Supp. 531 (D.Minn.1994)(eye bank acted in good faith when it removed eye when it relied on form doctor erroneously completed).

donation. Further, Thompson testified the consent form appeared to be valid on its face and if it contained an ambiguity, it was MTS's practice to contact the family to discuss the discrepancy. The record reflects MTS only removed what was specified on the face of the consent form, and there were not limitations written upon the form. Moreover, MTS offered testimony it followed its standard protocol when removing the eyes, bone, and tissue. Finally, no one from Decedent's family contacted MTS to limit or revoke the gift.

In light of these findings, we hold MTS acted without negligence and with good faith in procuring Decedent's eyes, bone, and tissue. Therefore, MTS is entitled to immunity from Appellant's claims under the UAGA. Appellant's first point is denied; we affirm the trial court's grant of summary judgment in favor of MTS.

Appellant's second point challenges the trial court's grant of summary judgment in favor of Hospital and Guelbert on similar grounds, namely, there is a genuine issue of material fact as to whether Guelbert was negligent in his explanation and representations to Appellant about the amount of bone to be removed from Decedent. Appellant offers the depositions of Guelbert, Hospital, Appellant, and her children as evidence of this disputed fact. Hospital and Guelbert respond with four arguments alleging how they were entitled to immunity under the UAGA, and thus, summary judgment was entered properly in their favor.

As was the case with MTS, Hospital and Guelbert bear the burden of proving they acted without negligence and in good faith in procuring consent from Appellant under the UAGA. Summary judgment is not as feasible in negligence cases as it may be in other types of cases. *Hammonds v. Jewish Hosp. of St. Louis*, 899 S.W.2d 527, 529 (Mo.App. E.D.1995). *See also Bruner v.*

*City of St. Louis*, 857 S.W.2d 329, 332 (Mo.App. E.D.1993) and *Miller v. River Hills Development*, 831 S.W.2d 756, 763 (Mo.App. E.D.1992). In determining whether Hospital and Guelbert acted without negligence, we must examine the record to see if there is no genuine dispute as to the facts necessary to support the affirmative defense of good faith immunity.

The record reflects a definite factual dispute as to the representations Guelbert made to Appellant in the course of procuring her consent to donate Decedent's eyes, bone, and tissue. Initially, Appellant was opposed to making any donation. However, after speaking with Guelbert in great detail, she consented. Both parties give diametrically opposed accounts of the discussion with respect to the explanation of what exactly would be donated. In such a case, it is not this tribunal's duty to determine the credibility of the witnesses or resolve these factual issues. That duty is for the trier of fact.

Therefore, we find there are genuine issues of material fact that must proceed to trial. We reverse and remand with respect to the trial court's judgment granting summary judgment in favor of Hospital and Guelbert.

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.