*1066 OPINION OF THE COURT
Carmen R. Parenti, J.
The plaintiff, Donald M. Nicoletta, has commenced this action against the Rochester Eye and Human Parts Bank, Inc. (Eye Bank) and the Newark-Wayne Community Hospital, Inc. (Hospital) to recover for physical and emotional/psychological injuries which he has allegedly suffered as a result of the removal of the eyes of his son, Peter Nicoletta, for donation, following a fatal motorcycle accident on June 12, 1984. Both defendants have moved for summary judgment, pursuant to CPLR 3212, requesting dismissal of plaintiff’s complaint. They seek such relief on the ground that the affirmative defense under Public Health Law § 4306 (3) has been established by uncontroverted facts, as a matter of law. The defendant Hospital has also moved, in the alternative, to dismiss the complaint on the ground that plaintiff has failed to state a cause of action.
Section 4306 (3) of the Public Health Law provides: "A person who acts in good faith in accord with the terms of this article or with the anatomical gift laws of another state is not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his act.” (Emphasis added.) Both the Eye Bank and the Hospital argue that certain documentary evidence, especially when taken together with the transcript of testimony given at an examination before trial by various witnesses present on the night in question, establishes as a matter of law that each defendant acted in good faith regarding the donation of Peter Nicoletta’s eyes, and that they may therefore not be held liable for any damages to the plaintiff.
On the night in question, the decedent was taken to the Hospital following the motorcycle accident. At approximately 9:30 p.m., a woman identifying herself as Peter Nicoletta’s wife, arrived at the Hospital and signed an emergency room "face sheet” which authorized emergency treatment; the signature was that of "Judy Shufelt”, followed in parentheses by the word "wife”. In fact, the said Judy Shufelt was not the legal wife of Peter Nicoletta but had resided with him for 10 years and was the mother of his two children. The decedent’s parents arrived at the Hospital shortly thereafter, and the family was subsequently advised that Peter Nicoletta had died, at which point Judy Shufelt left the hospital.
At approximately 2:30 a.m. the following morning, Judy *1067 Shufelt returned to the Hospital, accompanied by her sister and brother-in-law, for the purpose of arranging the donation of the decedent’s bodily organs. She spoke with Lucille La-Clair, R. N., the charge nurse for the emergency room at that time, who advised her that there was probably still time to donate the decedent’s eyes. Mrs. LaClair proceeded to prepare a handwritten document giving permission to have Peter Nicoletta’s eyes removed by the Eye Bank. This permission form was signed "Judy Nicoletta (wife)”, and was witnessed by Mrs. LaClair and Louise Barto, R. N., who was in the emergency room on her break. The Eye Bank was then notified, and an employee came to the Hospital and removed the eyes of the decedent for donation.
The requirements for a valid gift of any bodily part under the Uniform Anatomical Gift Act are set forth in Public Health Law § 4303 (5) as follows: "Any gift by a person designated in subdivision two of section four thousand three hundred one of this article shall be by a document signed by him or made by his telegraphic, recorded telephonic, or other recorded message.” Section 4301 (2) establishes a descending order of priority for those persons with authority to make an anatomical gift, effective only when the donee does not have actual notice of contrary indications by the decedent, actual notice of opposition by one of the other next of kin as specified in the statute, or other reasons to believe that an anatomical gift is contrary to decedent’s religious or moral beliefs. The first order of priority for next of kin for such a donation is the decedent’s spouse. (§ 4301 [2] [a].)
The plaintiff’s position is that Judy Shufelt was not a proper person under section 4301 to give permission for the donation of Peter Nicoletta’s eyes, as she was not the legal spouse of the decedent. Therefore, the actions of the Hospital and the Eye Bank are alleged to have been totally unauthorized. Plaintiff further argues that the defendants are not entitled to the immunity afforded by the "good faith” provisions of section 4306 (3) under the circumstances of this case, or at the least, that there are sufficient factual issues regarding the existence of good faith on the part of both defendants, so as to defeat a motion for summary judgment.
The issues in this case appear to depend heavily on the determination of what constitutes "good faith” within the context of this statute. Good faith is defined as an "honest belief, the absence of malice and the absence of design to *1068 defraud or to seek an unconscionable advantage”. (Black’s Law Dictionary 623 [5th ed 1979].)
Many courts have attempted to further define the term in cases involving a variety of situations ranging from the bona fide purchaser under the Uniform Commercial Code (UCC 8-302) to the prescribing of narcotic drugs under the Public Health Law (§ 3335). Unfortunately, however, there has been no reported case dealing with the question of good faith in connection with the subject of anatomical gifts. Counsel for the Eye Bank does cite some language from a case decided by the Supreme Court of Wisconsin, in which that court, in construing the Wisconsin Uniform Anatomical Gifts Act (which contains the same language as that of the New York statute), stated: " 'Good faith’ is a term that 'prescribes a general course of conduct.’ Whether an individual acted in good faith is a question that can only be answered following a careful analysis of the facts in a particular case.” (Williams v Hofmann, 66 Wis 2d 145, 153, 223 NW2d 844, 848 [1974].) Such language would seem to suggest that a determination as to whether the defendants acted in good faith is inappropriate on a motion for summary judgment.
Many New York courts have, in fact, ruled that "an issue such as good faith cannot be resolved on papers”. (Ebner v 91st St. Tenants Corp., 126 Misc 2d 108, 111 [1984], citing Schwartz v Marien, 37 NY2d 487 [1975].) In the case of Insurance Co. v Manufacturers Hanover Trust Co. (106 AD2d 285 [1984]), the First Department held that "whether appellant’s actual conduct conformed to either a good-faith standard or the observance of reasonable commercial standards poses a factual issue, inappropriate for resolution on a motion for summary judgment”. (Emphasis added.)
However, after an extensive review of the reasoning behind these so-called "good-faith decisions”, this court believes that the instant case is distinguishable. In those decisions, the court had to deal with the question of whether a defendant had "conformed to a standard of conduct required by law”, and that determination was held to be a question of fact. (Kiernan v Hendrick, 116 AD2d 779, 781, appeal dismissed 68 NY2d 661.) In those cases, most of which involved dealings of a corporate or commercial nature, there was no express or specific criteria of a statutory nature incorporating such a "standard of conduct” against which an individual’s conduct could be measured, without submitting evidence in the form of in-court testimony to a trier of fact.
*1069 In the instant case, however, the court believes that the Legislature has created an objective standard by which the good faith of a donee could be measured. The Uniform Anatomical Gift Act establishes a statutory scheme which outlines the means of effecting an anatomical gift, the classes of individuals entitled to effect such a gift, and the circumstances under which such a gift must be deemed null and void. None of the previous good-faith cases have involved such a definitive standard by which to judge a defendant’s conduct.
Turning first to the Eye Bank, it appears to this court that the defendant acted "in good faith in accord with the terms of this article” (Public Health Law § 4306 [3]). The agent of the Eye Bank removed the eyes of Peter Nicoletta in justified reliance on the written permission form which was furnished by the Hospital and which more than complied with the requirements of section 4303 (5), in that it was a document not only signed by the purported next of kin, but also witnessed by two registered nurses at the Hospital. The signature on that document was "Judy Nicoletta (wife)”. Nowhere in the pleadings or the transcripts of the examinations before trial does it appear that the Eye Bank had actual notice that the gift was opposed by a member of any of the classes of individuals set forth in section 4301. Therefore, the court finds that the Eye Bank, having justifiably relied on a facially valid permission form, acted in good faith in accord with the terms of the Uniform Anatomical Gift Act, and therefore cannot be held liable by the plaintiff for damages in any civil action. Accordingly, the court grants the defendant Eye Bank’s motion for summary judgment.
The position of the Hospital in this case, however, requires further review. Unlike the Eye Bank, the Hospital, through its agents, was aware that the woman purporting to be Peter Nicoletta’s wife had used two different last names within the space of a few hours while at the' Hospital. The plaintiff therefore argues that the Hospital should be charged with notice that this woman might not, in fact, have been the wife of the decedent, and that there was sufficient reason for the Hospital to question Judy Shufelt’s authority to effect the organ donation. Accordingly, the plaintiff concludes that the Hospital cannot be found to have acted in good faith and cannot claim the immunity afforded under section 4306.
Preliminarily, the court notes the plaintiffs objection to the sufficiency of the defendant’s motion papers alleging that an *1070 attorney’s affidavit is insufficient to sustain a motion for summary judgment. However, the Court of Appeals has upheld the propriety of such a procedure, stating that "[t]he fact that defendant’s supporting proof was placed before the court by way of an attorney’s affidavit annexing plaintiff’s deposition testimony and other proof, rather than affidavits of fact on personal knowledge, does not defeat defendant’s right to summary judgment.” (Olan v Farrell Lines, 64 NY2d 1092, 1093 [1985], citing Gaeta v New York News, 62 NY2d 340 [1984].) Therefore, the court finds that the Hospital has brought its motion in proper form and turns to the merits of its contentions.
The court has reviewed the transcript of the examination before trial which was held on March 5, 1986, at which several employees of the Hospital testified. The transcript sets forth the sequence of events which occurred at the Hospital on the night of Peter Nicoletta’s death, and certain testimony contained therein appears to be critical in the determination of this motion.
Ms. Sheila Derr, the emergency room secretary, testified it was she who filled out the emergency room face sheet regarding Peter Nicoletta, based on information supplied by the charge nurse, Barbara DeCicca, and by Judy Shufelt, who arrived at the emergency room shortly after Peter Nicoletta was brought in. She identified herself to Ms. Derr as "the wife of Peter Nicoletta”, but signed the face sheet "Judy Shufelt”. However, Ms. Derr testified that she did not question that signature, given the increasing frequency with which many married women are retaining their maiden names.
The most significant testimony was that of Lucille LaClair, R. N., who was the charge nurse in the emergency room, commencing at 11:00 p.m. on June 12, 1984 (after the body of Peter Nicoletta had been transported to the morgue). Ms. LaClair testified that a woman came into the emergency room, identified herself as the wife of Peter Nicoletta, and indicated her desire to donate the decedent’s eyes to the Eye Bank. Ms. LaClair proceeded to prepare a permission form, which was signed by the woman as "Judy Nicoletta (wife)”, and the signature was then witnessed by Ms. LaClair and Lois Barto, R. N.
Ms. LaClair testified that she was aware of the emergency room face sheet, and that the signature thereon was that of "Judy Shufelt (wife)”. She proceeded to question the woman *1071 regarding the discrepancy between the two signatures. The woman reaffirmed to Ms. LaClair that she was Peter Nicoletta’s wife, and had been for "a couple of years”, and as to Ms. LaClair’s inquiry regarding the two names, she replied "sometimes I sign it one way, and sometimes I sign it another way.” (The court also notes that Judy Shufelt was accompanied by two other individuals, neither of whom ever contradicted Judy Shufelt’s statements regarding her identity in any way.)
It is the position of this court, based on the uncontroverted evidence produced at the examination before trial, that the defendant Hospital had neither actual nor constructive knowledge that Judy Shufelt was not who she said she was, to wit, Peter Nicoletta’s wife. The Hospital, by its agents, conducted a reasonable inquiry as to the identity of the purported wife, and having received a plausible response, had no reason to believe that any irregularity existed. Moreover, the plaintiff had been at the Hospital earlier in the evening when his son was brought in, and had never challenged the authority of Judy Shufelt in signing the emergency room authorization, nor had he given the Hospital notice of his objections to any organ donation. To require further action on the part of the defendant would not only impose an unreasonable duty upon the Hospital, but would also run afoul of public policy considerations, as such a decision would tend to jeopardize the whole process of organ donation by causing unnecessary delays, thereby frustrating the entire intent of the Uniform Anatomical Gift Act.
The court therefore finds that the Newark-Wayne Community Hospital, Inc. acted in good faith pursuant to Public Law § 4306 (3), and that the defendant’s compliance with the statute has been established by uncontroverted facts, as a matter of law. The court therefore does not reach the merits of the Hospital’s second contention that plaintiff failed to state a cause of action against the Hospital.
Summary judgment is granted to both defendants, and the plaintiffs complaint is dismissed in its entirety.