**Hanna LYON, Susan Lyon and Deborah Knapper, Plaintiffs,**

v.

**UNITED STATES of America and Regents of the University of Minnesota d/b/a Minnesota Lions Eye Bank, Defendants.**

Civ. No. 4–92–1072.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 11, 1994.

Mark William Gehan, Thomas E. McEllistrem, Collins Buckley Sauntry & Haugh, St. Paul, MN, for plaintiffs.

Robert Michael Small, U.S. Atty. Office, Minneapolis, MN, for U.S.

Ted Edwin Sullivan, Constance L. Hall, Lind Jensen & Sullivan, Minneapolis, for Regents of University of Minnesota.

**ORDER**

DOTY, District Judge.

This matter is before the court on defendants' separate motions for dismissal and

summary judgment. Based on a review of the file, record and proceedings herein, the court grants defendants' motions for summary judgment.

## BACKGROUND

Plaintiffs are the widow (Hanna Lyon) and daughters (Susan Lyon and Deborah Knapper) of Jack Lyon, a patient who died at defendant United States Veteran's Administration Medical Center ("the VA") August 4, 1991. Jack Lyon was hospitalized at the VA beginning on May 23, 1991,[1] having been transferred there from Methodist Hospital. The nature of Jack Lyon's illness was undetermined at the time of his death. Shortly after Jack Lyon's death, Dr. Thomas Meyer, a new resident at the VA, met with Hanna Lyon and Susan Lyon. During this meeting Dr. Meyer asked them to sign several forms to authorize an autopsy which they had requested. One of those forms signed had stamped on it "eye donor." The form was identical in all other respects to another autopsy authorization form signed by plaintiffs at the meeting.

It is undisputed that the plaintiffs refused to consent to the donation of Jack Lyon's internal organs or tissue. It is also undisputed that at the time they signed the authorizations for the autopsy they did not wish to donate his eyes. However, Dr. Meyer asked them to sign the "eye donor" authorization as a formality. Plaintiffs do not contest the VA's claim that Dr. Meyer, as a new resident, was unfamiliar with the forms used at, and the procedures followed by, the hospital. Someone at the VA other than Dr. Meyer contacted defendant Minnesota Lion's Eye Bank ("Eye Bank") to inform them that an eye donor had died. Dick Schmidt, an Eye Bank enucleator, went to the VA to remove Jack Lyon's eyes. He was shown the authorization form signed by Hanna and Susan Lyon. After the eyes were removed Schmidt was informed that the family did not consent to the eye donation. He was instructed by the Eye Bank to transport the eyes to the Eye Bank for proper storage until the matter could be resolved.

A series of phone calls were made to the Lyon home in an attempt to clarify the confusion. What was said by whom and when it was said is disputed. Eventually, Jack Lyon's eyes were brought to the mortuary where they were reset prior to his burial.

Plaintiffs bring suit claiming $150,000 in damages for interference with a dead body, intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants have moved individually for dismissal pursuant to Rule 12(c) of Federal Rules of Civil Procedure. Defendants contend that the claims of Susan Lyon and Deborah Knapper should be dismissed because only Hanna Lyon, as Jack Lyon's widow, has standing to bring suit for interference with a dead body under Minnesota law. Defendants have also moved individually for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. They contend that they are entitled to immunity under Minnesota Statutes Section 525.9221, Minnesota's version of the Uniform Anatomical Gift Act (1987).[2]

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for a judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to direct a verdict if there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evi-

---

1. Plaintiffs' memorandum of law states both May 23, 1991, and June 13, 1991, as the date of Jack Lyon's admission to the VA.

2. Minnesota is one of fourteen states which has adopted the Uniform Anatomical Gift Act (1987).

All other states and the District of Columbia have adopted the Uniform Anatomical Gift Act (1968). Minn.Stat. § 525.9221 is, in all relevant parts, identical to Uniform Anatomical Gift Act (1987) § 11.

dence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the non-moving party and gives that party the benefit of all justifiable inferences that can be drawn in her favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

The court first considers defendants' claims to immunity under Minnesota's Anatomical Gift Act. The statute reads in relevant part as follows.

A hospital ... [or] enucleator ..., who acts in accordance with sections 525.921 to 525.9224 or with the applicable anatomical gift law of another state or a foreign country or attempts in good faith to do so is not liable for that act in a civil action ...

Minn.Stat. § 525.9221(c). If defendants acted in good faith they are immune from liability in this action and therefore will be entitled

to summary judgment on all of plaintiffs' claims.

Defendants both claim to have acted in good faith. The statute does not define what constitutes a good faith effort to comply with the statute. The court has been unable to find any case law from Minnesota appellate courts interpreting the term "good faith" in Minn.Stat. § 525.9221.[3] However, the good faith defense is discussed in two case dealing with eye donations in other jurisdictions having laws similar to the Minnesota statute. *Nicoletta v. Rochester Eye and Human Parts Bank, Inc.,* 136 Misc.2d 1065, 519 N.Y.S.2d 928 (N.Y.S.Ct.1987); *Hinze v. Baptist Memorial Hospital,* 1990 WL 121138 (Tenn.App.1990).

In *Nicoletta* the plaintiff was the decedent's father, who alleged that his son's eyes were wrongfully removed when the defendant Eye Bank and Hospital acted upon a donor form signed by a woman purporting to be the decedent's wife.[4] The *Nicoletta* court held that, as a matter of law, the Eye Bank and the Hospital were entitled to summary judgment based on a good faith defense. The court defined good faith by reference to *Black's Law Dictionary.* Good faith is the "honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." *Nicoletta,* 519 N.Y.S.2d at 930 (citing *Black's Law Dictionary* (5th ed. 1979)). The Eye Bank lacked knowledge that the facially valid authorization was not made by the decedent's wife. Justifiable reliance on a facially valid permission form amounted to acting in good faith. *Id.* at 931. The immunity of the Eye Bank was thus easily established. The reasoning

---

**3.** Plaintiffs fault defendants for their discussion of immunity law and direct the court to a series of Minnesota cases which hold that in the context of official immunity the defendant's claim to immunity based on good faith can be defeated on a showing of malice defined as "nothing more than the intentional doing of a wrongful act without legal justification or excuse, or otherwise stated, the willful violation of a known right." *Rico v. State,* 472 N.W.2d 100 (Minn.1991). Plaintiffs obviously misconstrue defendants' immunity claim. Defendants contend that they are immune by virtue of the good faith exception provided in the Anatomical Gift Act itself, not because of any form of official immunity.

**4.** The Uniform Anatomical Gift Act provides that the donation of organs may be authorized by relatives of the decedent. Priority in the right to authorize donation follows the closeness of the relationship to the decedent. A spouse has priority over a parent. The authorization was signed by the decedent's long term companion and mother of his children. She represented herself to hospital employees as the decedent's wife in the presence of witnesses who did not indicate that she was not married to the decedent.

of *Nicoletta* with respect to an eye bank acting upon a facially valid donation form was adopted by the Tennessee Court of Appeals in *Hinze*, 1990 WL 121138 at 6. There the court held that a donation form signed by someone purporting to be the decedent's adult grandson was sufficient to immunize the eye bank which removed the decedent's eyes in reliance on the donation authorization form.

■ The court finds that with respect to defendant Minnesota Lion's Eye Bank, the circumstances of this case and of *Nicoletta* and *Hinze* are nearly identical. The Eye Bank acted upon a routine notice from the VA that eyes had been donated. The Eye Bank enucleator was shown a facially valid donation form. It was not until after he had removed Jack Lyon's eyes that the enucleator was made aware of any difficulty with the donation. From the evidence before the court the Eye Bank can be said to have acted in an appropriate manner both before and after the enucleation. The Eye Bank contacted the family in an attempt to clarify the confusion, preserved the eyes properly and brought them to the mortuary promptly when requested. Plaintiffs allege that the Eye Bank may have known that the consent form was invalid before the enucleation, but they present no substantive evidence of this knowledge. Plaintiffs' mere suspicion of a defendant's wrongdoing is an insufficient basis upon which to deny summary judgment. In defending against a summary judgment motion a party may not rely on the assertion that facts which might be developed at a later point will support a claim. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. However unfortunate the situation may have been for the plaintiffs, the Eye Bank acted in good faith. Even viewing the evidence in a light most favorable to plaintiffs, the Eye Bank is entitled to summary judgment based on the statute's provision of good faith immunity.

■ The question of good faith immunity for the VA is more complex. The *Nicoletta* and *Hinze* courts dealt with situations which were factually different as related to the hospitals involved. In both of those cases the hospital relied on the representations of individuals claiming to be relatives who, un-

der the relevant statutes, would have been able to authorize eye donations. Here there is no question of someone falsely claiming the right to authorize the donation. The authorization form would have been valid had Hanna Lyon actually given her consent to the donation. The hospital claims that everyone who relied upon the form signed by Hanna and Susan Lyon believed it to be valid. The issue of the VA's good faith turns on whether that claim is true or whether the hospital arranged for the enucleation despite the fact that someone in authority knew that Jack Lyon and his family did not consent to the eye donation.

Plaintiffs seek to overcome the hospital's good faith defense in three ways. First, plaintiffs claim that the hospital had direct knowledge that Jack Lyon himself did not want to donate any organs. They claim that as Lyon was transferred between wards he was always asked as a matter of routine, along with many other routine questions, whether he wished to be an organ donor. He consistently refused to become a donor. There is a factual dispute as to whether and how frequently those requests were made. The VA does not suggest that this is not one of the questions routinely asked patients. Plaintiffs argue that the request was made many times, at least enough times to notify the VA that Jack Lyon was refusing to be an organ donor. However, it is clear from the record that Lyon was hospitalized over a prolonged period of time. He entered the VA on May 23, 1991 and remained there until his death on August 4, 1991. Over that 75–day period he was probably asked many different questions several times. Furthermore, there is no claim by plaintiffs that Lyon was ever pressed to become a donor against his will. The only claim the plaintiffs make concerning coercive pressure is the complaint they make against a VA physician who called them after the enucleation took place. Plaintiffs note that under the older Minnesota version of the Anatomical Gift Act, a hospital was required to note that a patient declined to become a donor. Minn. Stat. § 525.922, subd. 4 (1986). The VA evidently did not follow that procedure. However, plaintiffs also candidly note that the

statute explicitly provided that failure to make such a record was not a basis for liability. Minn.Stat. § 525.9214(e). Plaintiffs suggest that failure to comply with the statute demonstrates a lack of good faith on the part of the VA. The court refuses to draw such a conclusion in the absence of further substantial evidence.

There is no dispute that Dr. Meyer was confused about the form he was asking Hanna and Susan Lyon to sign to authorize the autopsy. And there is no dispute that they signed the form intending to authorize only an autopsy and not an eye donation. There is no question of Dr. Meyer's good faith. He thought he was complying with a bureaucratic formality. He had no intimation of the traumatic events he thereby initiated. Neither can there be a question of the good faith of any other VA employee who, being familiar with the normal use of an eye donor form, and not knowing of plaintiffs' wishes, relied upon the form stamped "eye donor."

Plaintiffs' second attempt to overcome the VA's good faith defense is based on events which purportedly occurred after the enucleation. They claim that there is a material question of fact as to whether defendant VA altered the autopsy consent form. Initially, plaintiffs alleged that deception had occurred. They claimed that "eye donor" was stamped on the form after it had been signed by Hanna and Susan Lyon. Had this been the case, the good faith of the VA would be in serious doubt. However, in her deposition, Susan Lyon acknowledged that the form was stamped "eye donor" when she signed it. Plaintiffs now contend that marks on the form which were clearly made by someone other than Dr. Meyer or the plaintiffs demonstrate that the form was altered. Plaintiffs do not show that any of these marks on the form are of material significance. The mere fact that another person made notations on the form does not demonstrate defendants' lack of good faith. Those notations show only that another person viewed the form and marked it for some unknown purpose. It would certainly not be unusual for other hospital personnel to make notations on a form signed by a patient's family members at a physician's request. Thus, plaintiffs' continued assertion that there is a material fact which warrants denial of summary judgment is without any foundation.

Plaintiffs also contend that they were badgered by Dr. Palmieri of the VA to give an after the fact ratification of the donation. They complain that he was rude and arrogant, oblivious to the fact that they were in mourning. The nature of Dr. Palmieri's behavior is disputed, but the court does not find it relevant to the issue of whether the VA acted in good faith when Lyon's eyes were removed. Dr. Palmieri apparently attempted to clarify the reason for what he thought was a withdrawal of Jack Lyon's personal authorization of the donation of his eyes. Dr. Palmieri apparently tried to persuade plaintiffs that their stated reason for refusing donation, that Jack Lyon had glaucoma and that the eyes were therefore worthless for any purpose, was mistaken. After what appears to have been a sharp exchange over the telephone between Palmieri and Charles Lutchen, Susan Lyon's husband, Palmieri ceased his attempt to gain authorization for the donation. Whether Palmieri's behavior and demeanor were socially or even professionally inappropriate is not the real issue here. Such behavior would not defeat the VA's good faith defense as to the enucleation which had already occurred.

Plaintiffs' third attempt to defeat the hospital's immunity defense is their inclusion in their pleadings and memorandum of the religious basis for their refusal to donate Lyon's eyes. While not questioning the sincerity of that claim, the court does not find it relevant to the issue of the hospital's good faith. From the facts presented, any religious motive to not be an organ donor was never mentioned by Jack Lyon. Various documents filed by both plaintiffs and defendants indicate that the explicit basis for not donating Jack Lyon's eyes was that he had glaucoma. Defendants cannot be faulted for their attempt to inform plaintiffs that Jack Lyon's glaucoma was not a medical reason to not donate his eyes. Plaintiffs apparently persisted in their belief that glaucoma rendered the eyes useless. They made no reference to their religious reservations or objections. What would have transpired had plaintiffs

made clear their religious reasons is now only a matter of speculation. But such speculation cannot defeat the VA's claim to have acted in good faith upon the knowledge they had at the time.

The Uniform Anatomical Gift Act is clearly designed to balance two competing policy interests. There is the need for donations of eyes and other organs for transplantation and research purposes. Time is usually of the essence in securing donated organs at the time of the donor's death. The Act allows hospitals and physicians to ascertain with a high degree of certainty when someone is willing to donate organs, and to arrange for the prompt removal and preservation of donated organs. The Act also recognizes the religious and moral sensibilities of those who do not wish to donate organs. The Act does not compel organ donations nor does it establish a presumption that organs will be donated. The good faith exception to civil and criminal liability is designed for situations such as the one before the court, where because of confusion, an organ is removed without genuine consent. Defendant Eye Bank had no knowledge that the facially valid form did not represent the wishes of Jack Lyon and his family. The Eye Bank acted in good faith both in the enucleation procedure and subsequently when the lack of genuine consent was discovered. The Eye Bank is therefore entitled to immunity under the statute.

Although the facts show that confusion was created by acts of VA personnel, the court finds that the hospital acted in good faith. When a question was raised concerning the validity of the consent form, the VA attempted to clarify it as best it could. After it became clear that plaintiffs had not consented to the donation of Jack Lyon's eyes, the hospital took steps to rectify the situation. The VA is thus entitled to immunity under the statute.

### CONCLUSION

Plaintiffs have brought this suit seeking to recover damages based on the enucleation of the eyes of Jack Lyon, their husband and father, following his death at the VA hospital. Defendants acknowledge that no genuine consent was given for the removal of Lyon's eyes which were returned to the family in time for Lyon's burial. Defendants do claim to have acted in good faith within the meaning of Minnesota Statutes Section 525.9221. The court finds that the Eye Bank and the VA acted in good faith and are entitled to immunity from civil suit, and therefore grants their motions for summary judgment. Defendants' motions for dismissal of the claims of Lyon's daughters is thus rendered moot.

Accordingly, **IT IS HEREBY ORDERED** that the motions for summary judgment by defendant United States of America and defendant Minnesota Lion's Eye Bank are granted.

**LET JUDGMENT BE ENTERED AC-CORDINGLY.**