[No. 48157-6-I. Division One. March 18, 2002.]

TIMOTHY SATTLER, *Individually, as Personal Representative, and as Guardian, Appellant,* v. NORTHWEST TISSUE CENTER, *Respondent.*

---

[14] *In re Marriage of C.M.C.,* 87 Wn. App. 84, 89, 940 P.2d 669 (1997), *aff'd sub nom. In re Marriage of Caven,* 136 Wn.2d 800, 966 P.2d 1247 (1998).

*Kinnon W. Williams, Claudia E. Augustine,* and *Catherine C. Clark* (of *Williams & Williams*), for appellant.

*Irene M. Hecht* (of *Keller Rohrback, L.L.P.*), for respondent.

BECKER, A.C.J. — Washington's Uniform Anatomical Gift Act provides immunity to persons and entities who facilitate organ and tissue donations in accordance with the statute, or attempt in good faith to do so. The standard of good faith is objective; it affords immunity to qualified individuals and entities who demonstrate that they acted with an honest belief, without malice and without a design to defraud or to seek an unconscionable advantage.

In this case the Northwest Tissue Center facilitated the collection of corneas from the decedent after a conversation with Timothy Sattler, the surviving husband, in which he consented to the donation of certain tissues. Sattler maintains that he refused to donate any part of the eyes. Although Northwest's representative declares that Sattler did authorize a donation of the corneas only, Sattler declares that a donation limited to corneas was not discussed. A jury could thus conclude that Northwest's representative facilitated the collection of corneas while knowing there

was not a genuine consent. Because the disputed fact is material to Northwest's defense that it attempted in good faith to comply with the Act, the order of summary judgment granting Northwest immunity must be reversed.

■ An appeal from summary judgment is reviewed de novo. *CLEAN v. City of Spokane*, 133 Wn.2d 455, 462, 947 P.2d 1169 (1997). Summary judgment is appropriate where the moving party demonstrates an absence of any issue of material fact, and the nonmoving party, to whom the burden of the inquiry shifts and who bears the burden of proof at trial, fails to establish an essential element of that party's case. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). We review the facts in the light most favorable to Sattler as the nonmoving party. *CLEAN*, 133 Wn.2d at 462.

Shellie Rae Sattler died when a tree fell on the cab of the truck in which she was riding. After the accident, Daniel Christman, an official from the Snohomish County Medical Examiner's Office asked Shellie's husband, Timothy Sattler, if he would consider tissue and organ donation. According to Timothy Sattler, Christman "explained something about bone marrow and skin grafts. And he asked about her eyes. Then I told him, I said, bone marrow and bone, I said the skin graft for burn victims is fine, but do not touch her eyes." Sattler gave Christman permission to arrange for the Northwest Tissue Center, a procurement organization, to contact him.

That evening, Northwest employee Christine Keller called Timothy Sattler at home to discuss the donation. During their telephone conversation, Keller completed Northwest's "Consent for Organ and Tissue Donation Form." The form as she completed it indicates that Sattler authorized collection of eyes, bones, skin grafts, and heart tissue. During the conversation, Keller wrote "Corneas only, not whole globes" in the "Limitations" section of the consent form.

Based on the form as filled out by Keller, the Lions Eye Bank collected the corneas. Later, Sattler sued Northwest,

alleging that he did not give consent with respect to the corneas. Northwest claimed good faith immunity from suit, and moved for summary judgment on that defense. The trial court granted the motion. Sattler appeals.

Washington's Uniform Anatomical Gift Act authorizes a spouse, absent contrary instructions by the deceased, to make an anatomical gift of all or part of the decedent's body for an authorized purpose. The donation may be made orally, so long as the communication "is contemporaneously reduced to writing and signed by the recipient of the communication." RCW 68.50.550(3). The Act provides immunity from civil and criminal liability to certain persons and entities who act in accordance with the statute, or attempt in good faith to do so:

> A hospital, physician, surgeon, coroner, medical examiner, local public health officer, enucleator, technician, or other person, who acts in accordance with RCW 68.50.520 through 68.50.630 and 68.50.901 through 68.50.904 or with the applicable anatomical gift law of another state or a foreign country or attempts in good faith to do so, is not liable for that act in a civil action or criminal proceeding.

RCW 68.50.620(3).

■■■ Sattler first argues that because the statutory list of entities does not specifically include procurement organizations, Northwest is not entitled to assert the good faith defense. His interpretation of the statute on this point is incorrect. The statutory grant of immunity allows the defense to a "hospital, physician, surgeon, coroner, medical examiner, local public health officer, enucleator, technician, or other person" who acts in accordance with the Act. Under the rule of ejusdem generis, the general term "other person" cannot be read to include all other persons, but it does include an "other person" who is similar to the entities specified. *See Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244 (1972). Northwest, a corporation, is a "person" under the Act, RCW 68.50.530(8), and is engaged in the same type of activity with respect to tissue and organ

donation as the persons and entities specified in the statute.

A court's paramount duty in statutory interpretation is to give effect to the Legislature's intent. *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 113 Wn.2d 288, 292, 778 P.2d 1047 (1989). The Act declares that "it is in the best interest of the citizens of Washington to provide a program that will increase the number of anatomical gifts available for donation." RCW 68.50.520. Affording the good faith defense to procurement organizations effectuates the Legislature's intent. Without the protection from liability provided by the good faith defense, procurement organizations would likely hesitate to seek needed donations. We conclude Northwest qualifies as an "other person" and is entitled by statute to assert the defense.

The issue we must then determine is whether a jury could find that Keller did not attempt "in good faith" to act in accordance with the Act's requirement that organs and tissues be removed only with the consent of an authorized donor.

■ Washington's statute is based on the Uniform Anatomical Gift Act. A statement of application and construction directs that the act be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this act among states enacting it." RCW 68.50.902. In construing other statutes based on Uniform Acts and containing similar principles of application and construction, Washington courts have looked for guidance to case law from other jurisdictions that have modeled their laws on the same Uniform Act. *See Cellular Eng'g, Ltd. v. O'Neill*, 118 Wn.2d 16, 23-24, 820 P.2d 941 (1991); *Sedwick v. Gwinn*, 73 Wn. App. 879, 887 n.8, 873 P.2d 528 (1994). Thus, to determine the meaning of "good faith"—a term not defined in the statute—we look for guidance to courts in other jurisdictions that have confronted similar controversies.

■ The first reported case to examine the question of good faith under the Uniform Anatomical Gift Act was

*Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*, 136 Misc. 2d 1065, 519 N.Y.S.2d 928 (1987). The court held that the Act furnished an objective standard against which a claim of good faith could be tested. Good faith means an " 'honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.' " *Nicoletta*, 519 N.Y.S.2d at 930 (quoting BLACK's LAW DICTIONARY 623 (5th ed. 1979)).

*Nicoletta*'s definition of "good faith" has been widely adopted and applied by other courts in deciding cases under the Uniform Act. *See, e.g., Lyon v. United States*, 843 F. Supp. 531 (D. Minn. 1994); *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 972 P.2d 658 (Ct. App. 1999); *Kelly-Nevils v. Detroit Receiving Hosp.*, 207 Mich. App. 410, 526 N.W.2d 15 (1995); *Rahman v. Mayo Clinic*, 578 N.W.2d 802 (Minn. Ct. App. 1998); *Andrews v. Ala. Eye Bank*, 727 So. 2d 62 (Ala. 1999). And it is in harmony with Washington cases that have defined "good faith" or "good faith immunity" in other contexts. *See Whaley v. State*, 90 Wn. App. 658, 669, 956 P.2d 1100 (1998) (citing *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986)) (the standard definition of good faith is a state of mind indicating honesty and lawfulness of purpose); *Dutton v. Wash. Physicians Health Program*, 87 Wn. App. 614, 621 n.9, 943 P.2d 298 (1997) (quoting BLACK's LAW DICTIONARY 693 (6th ed. 1990)) (good faith is ordinarily used to describe the state of mind denoting honesty of purpose, freedom from intention to defraud and being faithful to one's obligation). To promote uniformity, we adopt the *Nicoletta* definition of "good faith."

Courts applying this definition have extended immunity to anatomical gift donees when a restriction on a consent form is miscommunicated. *See, e.g., Lyon v. United States*, 843 F. Supp. 531 (D. Minn. 1994). In that case, a hospital doctor asked the family of the decedent to sign several forms required to authorize an autopsy. One of the forms was stamped "eye donor." The family had not given consent for any tissue or organ donation. After receiving the com-

pleted forms, another hospital staff member contacted the local eye bank. In reliance on the form, the eye bank removed the decedent's eyes.

The plaintiff sued the hospital. The hospital successfully moved for summary judgment based on good faith immunity. The appellate court characterized the Act as balancing the need for donated organs against the right not to donate:

> The Uniform Anatomical Gift Act is clearly designed to balance two competing policy interests. There is the need for donations of eyes and other organs for transplantation and research purposes. Time is usually of the essence in securing donated organs at the time of the donor's death. The Act allows hospitals and physicians to ascertain with a high degree of certainty when someone is willing to donate organs, and to arrange for the prompt removal and preservation of donated organs. The Act also recognizes the religious and moral sensibilities of those who do not wish to donate organs. The Act does not compel organ donations nor does it establish a presumption that organs will be donated.

*Lyon*, 843 F. Supp. at 536. With both interests in mind, the court found that the "good faith exception to civil and criminal liability is designed for situations such as the one before the court, where because of confusion, an organ is removed without genuine consent." *Lyon*, 843 F. Supp. at 536.

Similarly, the Arizona Court of Appeals granted summary judgment for the defendant in *Ramirez*, 193 Ariz. 325. The defendant, Health Partners, was involved in communicating a consent for donation. An employee filled out a form indicating the family's consent to donate certain tissue, but scratched out the notation entitled "Bone" on the consent form in accordance with the family's desire not to make a bone donation. Health Partners did not effectively communicate this limitation to the agency that collected the tissue, and as a result, bone was removed. Following *Lyon*, the court stated that "[i]nadvertently causing removal of tissue without genuine consent because of confusion or miscommunication, however, does not automatically establish a

lack of good faith." *Ramirez*, 972 P.2d at 663. In the absence of evidence refuting Health Partners' showing that its employee acted in good faith, summary judgment was appropriate.

When a donee organization offers evidence of a good faith attempt to comply with the Act's consent requirement, the donor does not raise a genuine issue of material fact as to good faith merely by proving that he did not actually consent. We agree with the following statement in *Ramirez*:

> Most claims alleging unauthorized harvesting of body parts for which no valid consent had been given necessarily will arise from acts or omissions that deviate from the Act's terms in some respect. To accept plaintiffs' contention that statutory immunity is automatically unavailable in such cases would completely dilute, if not altogether eliminate, the good faith defense. Such a result appears contrary to the clear legislative intent and, therefore, we reject it.

*Ramirez*, 972 P.2d at 662. A negligence standard is not used to determine whether good faith immunity will attach. *See Whaley*, 90 Wn. App. at 669.

Good faith involves a factual inquiry, and the actor's conduct must be judged in light of all the circumstances then present. But this does not mean the issue cannot be resolved on summary judgment. *See Dutton*, 87 Wn. App. at 621-22. Indeed, most of the reported cases addressing good faith under an Anatomical Gift Act have affirmed orders of summary judgment in favor of defendants.

An exception to this pattern is *Perry v. St. Francis Hospital & Medical Center, Inc.*, 886 F. Supp. 1551 (D. Kan. 1995). In that case the family members signed a consent form indicating permission to take "eyes" and "bone." They had initially expressed opposition to any donation that would require disfiguring the body, but claimed that a nurse talked them into consenting by representing, inaccurately, that the donations could be accomplished without any dismantling of the body. The nurse then presented a consent form that had been completed to show donations of all

body parts. The decedent's wife modified the form by checking the "no" box except for the boxes opposite "eyes" and "bone."

The wife said the nurse assured her that the surgical team would understand the form as communicating that limitation. The nurse, on the other hand, admitted that she knew the surgical procedures for cornea and marrow donations would involve removal of eyes and bones; and she recalled that she did explain all this to the family.

The court first acknowledged, citing *Lyon*, that even when a person in authority has actual notice of a lack of consent, a court can still find good faith as a matter of law where the evidence indicates only "a mere mistake, bad judgment, or understandable confusion." *Perry*, 886 F. Supp. at 1559. The court concluded, however, that there was sufficient evidence of "conscious or intentional wrongdoing carried out for a dishonest purpose or furtive design." *Perry*, 886 F. Supp. at 1559. Given the nurse's knowledge that the necessary surgical procedures were extremely invasive, and accepting on summary judgment that a jury would find credible the family's testimony that the nurse minimized these procedures when explaining them in the consent conversation, the court concluded a jury could find she deliberately misled them in order to obtain consent.

Sattler maintains that this case is analogous to *Perry* because Keller admits to inquiring about a cornea-only donation after Sattler rejected her initial request for an eye donation. But what the court focused on in *Perry* was the difference between the way the nurse recalled the conversation and the way the family recalled it. The fact that the nurse continued to ask about a more limited donation after the family initially refused consent to any donation was not the evidence that compelled reversal of the order of summary judgment.

■ Here, there is no reason to believe that Keller's suggestion of the "corneas only" alternative was manipulative. Keller's declaration explains that her suggestion followed her normal practice. She says it is not uncommon for

donors who are initially reluctant about an eye donation to consent to a cornea donation upon learning that it is possible for the eye globes to remain in place after the corneas are taken. Her statement is unrebutted. *See Seven Gables Corp. v. MGM / UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986) (A nonmoving party in a summary judgment may not rely on having its arguments considered at face value, for after the moving party submits adequate affidavits, the nonmoving party must set forth specific contentions and disclose that a genuine issue as to a material fact exists.). We conclude a reasonable jury could not infer a lack of good faith on Keller's part solely from the fact that she did not take Sattler's initial "no" as his final answer concerning the eyes.

Christine Keller's affidavit describes a conversation about consent that is entirely consistent with a good faith attempt to comply with the Act's requirement for consent. She states that she called Sattler from her own home because it was late on a Sunday night and time was of the essence. She is a registered nurse, and experienced in dealing with persons affected by traumatic events. Keller underwent extensive training from Northwest on the proper procedures and protocols for obtaining consent for a donation over the telephone. Her training included observation of telephonic consents by other Northwest employees.

According to Keller, when speaking to family members about consent, it was her practice to assess their demeanor. Keller says she habitually asked if the family member needed more time to compose themselves and would disengage from the conversation if the person became emotional. Keller says she followed these practices during her conversation with Sattler.

Keller believed that Sattler was calm, coherent and in control during the conversation. In her recollection of the conversation, Keller explained to Sattler that Northwest had only 24 hours to arrange the donation. Keller says she

distinctly remembered her conversation with Sattler because of the tragic circumstances of Shellie Sattler's death.

Keller agrees that Sattler refused to make a donation of his wife's eyes. In the only part of her testimony that is contrary to Sattler's recollection, she states that she did explain the "corneas only" alternative to Sattler and he agreed to it. Sattler's declaration, on the other hand, states that they did not discuss the option of removing only the corneas. Based on her understanding of the conversation, Keller wrote "Corneas only, not whole globes" in the "Limitations" section of the consent form.

Keller's fiancé, who was with her on the night in question, listened in on the call as a witness, and his affidavit corroborates Keller's account of the conversation. Keller also testified that Northwest has no incentive to obtain consent for an eye or cornea donation. Northwest does not handle or receive donated corneas or eyes, as these are handled by the Lions Eye Bank. Northwest regularly inquired about eye donations as a courtesy to family members to avoid a separate call from the Lions Eye Bank.

Keller states that she recalls "a very straightforward consent. I recall Mr. Sattler responding 'yes' and 'no' to my questions: no to eyes, yes to corneas." She concludes, "I honestly believed that Mr. Sattler had consented to donating his wife's corneas, but not the whole eyes."

Sattler, on the other hand, repeatedly denied during his deposition that Keller asked him about a cornea donation. He said the question was never asked. If a jury, after hearing the two different versions, finds that Keller did not ask about corneas, one available inference is that Keller did not have an honest belief that Sattler had consented to a cornea donation. The discrepancy is simply not one that can be resolved on summary judgment.

Lending some support to Sattler's recollection is an unexplained inconsistency in the Donor Medical and Social History Form, filled out by Keller during the telephone conversation. Next to the words "Eye donors only," Keller

circled the words "Not Applicable." She did not fill in the space provided to indicate if there had been prior ocular disease or surgery, nor the space requesting the name and telephone number of the ophthalmologist. An ophthalmologist testifying on Sattler's behalf states that medical history is necessary to determine whether corneas are suitable for transplantation. Keller's failure to obtain this information may have been merely negligent, but it also suggests that at the time she filled out the form, she did not think Sattler had consented to a donation of any part of the eyes.

A jury may well find that this is a case of inadvertent confusion and miscommunication leading to the collection of more tissue than the donor had authorized. *Lyon* and *Ramirez* are cases where that was clear without a trial. This case, on the present record, is more similar to *Perry*. Because of the differing versions of the consent conversation, a trial is necessary. Under the Act's objective standard, a reasonable jury could find that Keller lacked an honest belief that Sattler had consented to removal of the corneas; and that she did not attempt in good faith to act in accordance with the provisions of the Act.

We do not address Sattler's additional argument that his consent to make a donation was an oral contract, as it was not raised below. RAP 2.5(a).

Reversed.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 147 Wn.2d 1016 (2002).