STEWART, J.
| plaintiffs Johnny Cooper[1] and Harriet Cooper, individually and on behalf of their deceased daughter, Tina White, filed suit against the Louisiana Procurement Agency and Terria Alexander to recover damages for injuries they allegedly suffered as a result of the removal of White’s organs following her untimely death. The trial court ruled in favor of the plaintiffs, awarding damages in the amount of $30,000. For the reasons set forth in this opinion, we reverse.
FACTS AND PROCEDURAL HISTORY
On August 27, 2008, St. Francis Medical Center (“St. Francis”) contacted the Louisiana Organ Procurement Agency (“LOPA”)[2] concerning one of its patients, Tina White. St. Francis informed LOPA that White was declared brain dead by medical professionals, and that she was a suitable organ donor.
After LOPA was notified, White’s case was assigned to Terria Alexander, who was LOPA’s family advocate on call that morning. Alexander searched the Louisiana Office of Motor Vehicle’s (“OMV”) donor registry and verified that White was an organ donor. As a precautionary measure, two other LOPA employees, Elaine Broussard and Marjorie Howard, entered White’s information into the OMV database, and also verified that White was a donor. Alexander then printed the documentation from the donor registry and a verification registry sheet. She | {.brought these two documents, along with the “State of Louisiana Consent for Anatomical Gift” (“consent form”), to St. Francis to present to White’s family when she discussed end of life options with them. Marjorie Howard, who was training to become a LOPA family advocate at the time, accompanied Alexander to St. Francis.
Alexander reviewed the OMVs donor registry with White’s family, and explained that White was a donor. While discussing *910 the donor process, White’s mother, Harriet Cooper, stated that she did not want “my daughter cut on.” After further discussing the donor process, Alexander obtained consent from White’s family. Cooper, Aaron White, who is White’s brother, and Alexander signed the consent form.
In February 2009, while cleaning up a few of White’s personal effects, Cooper found White’s most recent identification card, which was issued on January 15, 2008. Cooper realized that this identification card did not have the heart symbol on the front of the card that would indicate White was a donor.
On August 6, 2009, Johnny Cooper and Harriet Cooper, individually and on behalf of their deceased daughter, Tina White (collectively referred to as “plaintiffs”), filed a petition for damages, alleging that LOPA and Alexander (collectively referred to as “defendants”) (1) made false statements of facts and law in order to coerce plaintiffs into signing an organ donation consent form; (2) exercised fraud by making misrepresentations and false statements in order to unjustly obtain consent; and (3) negligently inflicted serious mental anguish and emotional distress |3upon plaintiffs through misinformation. Plaintiffs sought damages for emotional distress, physical and mental pain and suffering, mental anguish, medical expenses, loss of consortium, depression and loss of enjoyment of life.
On October 12, 2009, the defendants answered the plaintiffs’ petition, denying all aforementioned allegations.
After a bench trial, the trial court ruled in favor of plaintiffs, awarding damages in the amount of $30,000. Defendants appeal.
LAW AND DISCUSSION
In their first assignment of error, the defendants argue that the trial court improperly applied the provisions of the Louisiana Anatomical Gift Act. In the defendants’ second assignment of error, they argue that Cooper’s concerns regarding the incisions required for organ donation did not vitiate White’s prior consent. Next, the defendants assign as error the trial court’s finding that White’s subsequent identification card, void of any symbol indicating White was an organ donor, revoked the prior anatomical gift. Because these three issues are interrelated, we will discuss them together, rather than individually.
Under the Louisiana Anatomical Gift Act, La. R.S. 17:2352(B) states:
B. Subject to the provisions of R.S. 17:2354.2, an anatomical gift of a body or part of the donor may be made during his life for the purpose of transplantation, therapy, research, or education as provided in R.S. 17:2354 by any of the following:
(1) An adult donor;
(2) A minor donor, if he has been emancipated or authorized under state law to apply for a driver’s license.
|4(3) An agent of the donor, unless the power of attorney for health care or other record prohibits it.
(4) A parent of the donor, if he is an unemancipated minor.
(5) The guardian of the donor.
A donor may make an anatomical gift by authorizing a statement or symbol indicating that he has made an anatomical gift to be imprinted on his driver’s license or identification card. La. R.S. 17:2354(A)(1). In the absence of an express, contrary indication by the donor, a person other than the donor is barred from making, amending, or revoking an anatomical gift of the body or part of the donor if the gift complies with R.S. 17:2354 or 2356. La. R.S. 2354.2(A). A person authorized to *911 make an anatomical gift in accordance with this Part may amend or revoke the gift by a signed record or a later-executed document of gift that amends or revokes a previous gift or portion of a gift either expressly or by inconsistency. La. R.S. 17:2356(A).
La. R.S. 17:2357 states in pertinent part:
A. When a hospital refers a person at or near death to a procurement organization, the procurement organization shall make a reasonable search of the records of the office of motor vehicles and any known donor registry to ascertain whether the person has made an anatomical gift.
B. A procurement organization shall be allowed reasonable access to information in the records of the office of motor vehicles to ascertain whether a person at or near death is a donor.
C. When a hospital refers a person at or near death to a procurement organization, the procurement organization may conduct any reasonable examination necessary to ensure the medical suitability of a part that is or may be the subject of an anatomical gift for transplantation, therapy, research, or | ^education. During the examination period, measures necessary to ensure the medical suitability of the part may not be withdrawn unless the hospital or procurement organization knows that the person expressed a contrary intent.
A person acting in good faith in accordance with this Part or with the applicable anatomical gift law of another state, shall not be liable in a civil action, criminal prosecution, or administrative proceeding for any loss or damage caused by any act or omission. La. R.S. 17:2354.6(A). Black’s Law Dictionary defines “good faith” as “a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one’s duty or obligation, (3) the observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage.” The standard of good faith is objective; it affords immunity to qualified individuals and entities who demonstrate that they acted with an honest belief, without malice and without a design to defraud or to seek an unconscionable advantage. Sattler v. Northwest Tissue Ctr., 110 Wash.App. 689, 42 P.3d 440 (2002).
Black’s Law Dictionary defines “bad faith” as “dishonesty of belief or purpose.” A complete catalog of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party’s performance. Restatement (Second) of Contracts § 205 cmt. d (1979).
| (¡The Louisiana Anatomical Gift Act outlines the ways to effect an anatomical gift, the classes of individuals entitled to effect said gift, and the immunity provided to persons acting in good faith in accordance with the act. Notably, the act provides immunity for employees, such as Alexander, who in good faith relied on information contained in the donor registry.
In accordance with La. R.S. 17:2354(A)(1), on January 28, 2003, White affirmatively expressed her consent to be an organ donor, and the OMV placed a heart symbol on her state-issued identification card indicating her organ donor status. The OMV then uploaded her contact information to the statewide donor registry, giving LOPA the authority to harvest organs for transplant use upon her death.
*912 Pursuant to La. R.S. 17:2357, on August 27, 2008, St. Francis referred White to LOPA because she was at or near death. Employees of LOPA, namely Alexander, Broussard, and Howard, searched the OMV database, and all three persons verified that White was an organ donor.[3] The record is void of any indication that White amended or revoked her consent to be an organ donor by a signed record pursuant to La. R.S. 17:2356(A).
White’s most recent state-issued identification card, which was issued on January 15, 2008, did not have a heart symbol on it. Even though Aaron White testified that he took White to the OMV to obtain this card and that he overheard her inform them that she did not want to be a donor, he did not |7inform Alexander that he knew of White’s change in donor status. Further, he signed the consent form without protest, along with Cooper and Alexander. Aaron also testified that Alexander explained the consent form and that he understood its contents when he signed it.
Howard was present when the consent form was signed. During her testimony, she explained that White gave her “first person consent” when she went to the OMV and affirmatively expressed her consent to be an organ donor. Alexander further explained in her testimony that the purpose of Cooper, White’s next of kin, signing the consent form is so that she can confirm that White is a donor and designate which organs White will donate.
Howard testified that no family member stated that White did not wish to be donor, nor did they present White’s more recent Louisiana identification card proving that White was not a donor. The consent form contained a section where a designated party selected which parts of the body would be donated. Specifically, the party had to circle a “yes” or “no” response for each donation. Howard testified that the family can decline donating any organs by selecting “no” for each donation listed on the consent form. Both Aaron and Cooper testified that they had the option of circling “no” for all of the parts listed, and that they were not forced to sign the consent form.
Alexander also testified that when the family was presented with the consent form, no one stated that White did not wish to be a donor, nor did anyone state that they were with White when she obtained her Louisiana | ^identification card and that she was not a donor. Additionally, Alexander testified that Cooper stated she did not want White “cut on,” but that she never stated that she did not want White to be an organ donor. In Alexander’s log entry on the morning of August 27, 2008, she noted:
Family tried to disbute (sic) first person consent. After speaking with mother, Harriet Cooper (Witness), step-father, and brother, Aaron White (witness), for about 1 hour, family did agree with patient’s wishes.
The trial court noted in its oral reasons for judgment that this was a clear indication that consent was an issue. We disagree. Alexander testified that LOPA permits families to “veto” their family member’s decision to donate their organs, which can be done merely by opting to circle “no” on the entire list of organs that can be donated. We find that Alexander made a conscious effort to ease White’s family of their worry over the organ donation process. *913 In fact, she testified that after she explained the incision process, the family agreed with White’s decision to be an organ donor. Alexander testified that after she explained to Cooper that she did have a choice regarding which of White’s organs she wanted to donate, she circled “yes” or “no” at Cooper’s direction. Further, Cooper signed the consent form in her presence.
It is clear that White had the statutory authority to make an anatomical gift during her life pursuant to the Louisiana Anatomical Gift Act, and White exercised such authority. The record is void of any indication that Alexander acted maliciously or in bad faith in performing her duties. She merely relied on the information contained in the OMV donor registry, which was proper protocol pursuant to the Louisiana Anatomical 1¡¡Gift Act. The registry unambiguously indicated that White was an organ donor at the time of her death.
After a careful review of the record, we find that the facts, evidence and testimony presented do not support the trial court’s ruling. LOPA, by way of Alexander, acted in good faith in accordance with the Louisiana Anatomical Gift Act. The OMV donor registry clearly stated that White consented to be an organ donor, and any of Cooper’s concerns regarding White being “cut on” did not vitiate White’s prior consent. White’s organs, selected by the family for donation, were removed based on the consent form furnished by LOPA and freely signed by Cooper, Aaron and Alexander. It was not until six months after White’s death that Cooper found her daughter’s new identification card lacked the donor symbol. Even though the symbol did not appear on White’s most recent identification card, we find that its absence is not a revocation of her prior consent to be an organ donor.
It appears that the trial court erroneously attempted to hold the defendants responsible for the emotional distress Cooper incurred as a result of losing a child. After reviewing Cooper’s testimony, it is clear that she is mourning her daughter’s untimely death, but we note that this grief is independent from any issues presented here. We find that the trial court abused its discretion in finding liability and hereby reverse the $30,000 award in general damages.
^CONCLUSION
Finding error in the trial court’s inequitable judgment, we hereby reverse it and render judgment in favor of defendants, Louisiana Organ Procurement Agency and Terria Adexander. Costs assessed to the plaintiffs.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, LOLLEY and PITMAN, JJ.
Rehearing denied.

. Johnny Cooper was withdrawn as a party plaintiff in this matter upon discovering that he was not Tina White's biological father.

. LOPA is the federally designated organ procurement agency for Louisiana. It partnered with the Office of Motor Vehicles and established a statewide donor registry that allows citizens to designate their wish to be an organ donor on their driver's license.

. The OMV was not made a party to this suit. Alexander and Howard both testified that LOPA employees have access to the OMV registry to review a person’s organ donor status, but they do not have the ability to enter a person’s information into the OMV registry.